United States District Court
Southern District of Texas
**ENTERED**
August 14, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ELIAS GAITAN,<br>    Petitioner, | § § § | |
| v. | § § | Civil Action No. 1:19-cv-056 |
| LORIE DAVIS, Director, Texas<br>Department of Criminal Justice,<br>Correctional Institutions Division,<br>    Respondent. | § § § § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Elias Gaitan's "Petition for a Writ of Habeas Corpus by a Person in State Custody" and his corresponding "Memorandum of Law [in] Support of Petition Application for Writ of Habeas Corpus" (hereinafter, collectively, Gaitan's "§ 2254 Petition" or "Petition"). Dkt. Nos. 1, 15. The Court is also in receipt of Respondent Lorie Davis' "Motion for Summary Judgment with Brief in Support" (hereinafter, Davis' "Motion for Summary Judgment" or "Motion"). Dkt. No. 70. For the reasons provided below, it is recommended that: (1) Davis' Motion be **GRANTED**; (2) Gaitan's Petition be **DISMISSED WITH PREJUDICE**; (3) the Court **DECLINE** to issue a certificate of appealability; and (4) the Clerk of Court be **DIRECTED** to **CLOSE** this case.

## I.      Jurisdiction

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2241 and § 2254, which provide that jurisdiction is proper where the inmate is confined or where his state conviction was obtained. *See* 28 U.S.C. § 124(b)(5); *Wadsworth v. Johnson*, 235 F.3d 959, 961–62 (5th Cir. 2000) (same).

## II.    Background and Procedural History

On August 23, 2014, in the 357th Judicial District of Cameron County, Texas, a jury convicted Gaitan of: (1) "continuous sexual abuse of young child or children;"[1] (2) "aggravated sexual assault of a child;"[2] and (3) two-counts of "indecency with a child."[3] Dkt. No. 31-8 at 143–46.[4] The jury assessed punishment at life without parole for the counts of continuous sexual abuse of a young child and aggravated sexual assault of a child, and twenty years of imprisonment for both counts of indecency with a child. *Id.* at 151.  Judgment was entered on September 3, 2014.  *Id.* at 152–153.

The Thirteenth Court of Appeals (the "appellate court") affirmed Gaitan's conviction on November 10, 2016.  Dkt. No. 31-4; *see also Gaitan v. State*, No. 13–15–00661–CR, 533 S.W.3d 19, 32 (Tex. App.–Corpus Christi, Nov. 10, 2016).  In affirming his conviction, the appellate court explained that the "challenged statements were not the product of a custodial interrogation," and that it "cannot conclude [Gaitan] successfully defeated the strong presumption that the decisions of counsel [Rebecca RuBane] during trial fell within the wide range of reasonable professional assistance." *See* Dkt. No. 31-4 at 15.  The appellate court denied a motion for rehearing on January 18, 2017.  Dkt. No. 31-6 at 16.

Gaitan filed a petition for discretionary review ("PDR") in the Texas Court of Criminal Appeals ("TCCA") on February 22, 2017.  Dkt. No. 31-22.  That same day,

---

[1] TEX. PENAL CODE ANN. § 21.02.

[2] TEX. PENAL CODE ANN. § 21.021(a)(2)(B).

[3] TEX. PENAL CODE ANN. § 21.11(a)(1).

[4] The page numbers refer to the Bates-stamped number at the bottom of the pages of the State Court Records.  Dkt. Nos. 31, 32.

discretionary review was refused for lack of T.R.A.P. 9.4(i)(3) certification. *See* Dkt. No. 31-22 at 37. On February 15, 2018, Gaitan filed a pro se state application for a writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure[5] (hereinafter, Gaitan's "Art. 11.07 state habeas application"). Dkt. No. 32-12.

On April 25, 2018, the TCCA ordered the state trial court to determine whether trial counsel RuBane rendered ineffective assistance of counsel due to her health problems. Dkt. No. 31-28 at 1–3. On November 20, 2018, RuBane filed an affidavit denying Gaitan's allegations of ineffective assistance of counsel. Dkt. No. 32-11 at 42–44. On January 25, 2019, the trial court submitted its "Findings of Fact, Conclusions of Law, and Order," and concluded that: (1) Gaitan failed to prove that RuBane's representation fell below an objective standard of reasonableness; (2) his claims are not cognizable; and (3) he waived his right to remain silent when he voluntarily spoke with Detective Samuel Lucio. Dkt. No. 32-11 at 40–41. After conducting an independent review of the record, and the trial court's findings, the TCCA denied habeas relief on February 27, 2019. Dkt. No. 31-29 at 1–2. Gaitan filed the instant § 2254 Petition seeking federal habeas relief on April 4, 2019. Dkt. No. 1.[6]

In his Petition, Gaitan raises three distinct grounds for relief before this Court. Dkt. No. 1 at 6–7. Specifically, he asserts the following claims:

> (1) The prosecution engaged in prosecutorial misconduct in violation of the Fourteenth Amendment when it failed to disclose Gaitan's exculpatory claim of innocence, Detective Lucio took advantage of Gaitan's speech

---

[5] TEX. CODE. CRIM. P. ART. 11.07.

[6] Gaitan certifies that he placed his Petition in the prison mailing system on March 27, 2019. Dkt. No. 1 at 10. Gaitan's Petition is timely. *See Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (discussing the mailbox rule and noting that, for statute of limitations purposes, a pro se prisoner's petition is filed on the day it is placed in the prison mailing system.).

impediment to accuse him of committing the alleged crime, and it dismissed his Art. 11.07 state habeas application as conclusory;

(2) RuBane rendered ineffective assistance of counsel in violation of Gaitan's Sixth Amendment rights when she failed to investigate and introduce evidence about a "3rd party" that Lucio hired,[7] failed to subpoena witnesses, failed to argue that Gaitan's speech impediment lead to an unfavorable custodial interrogation, and her health problems resulted in poor performance during trial; and

(3) Appellate counsel Joseph Moreno rendered ineffective assistance of counsel in violation of Gaitan's Sixth Amendment rights based on Moreno's alleged close relationship with the prosecution, and his failure to raise certain claims on direct appeal.

*Id.*

Davis filed her Motion for Summary Judgment on April 20, 2020. Dkt. No. 70. Davis's Motion asserts that Gaitan's claims are either unexhausted and procedurally defaulted or otherwise lack merit. *Id.* at 1. Additionally, Davis requests that Gaitan's Petition be denied and that a certificate of appealability should not issue. *Id.* at 39. On May 11, 2020, Gaitan filed a "Rebuttal Motion for a New Trial" (hereinafter, Gaitan's "Response") in opposition to Davis' Motion. Dkt. No. 72. This case is now ripe for review.

## III.   Legal Standards

### A.   28 U.S.C. § 2254

The applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA")[8] govern petitions brought under 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 335-336 (1997). Pursuant to the AEDPA, a federal court may not grant habeas

---

[7] Gaitan states that Lucio hired a "3rd party" composed of unidentified individuals to capture him in Mexico. Gaitan fails to provide information regarding the identity of these individuals and whether they coordinated with local and state law enforcement. For purposes of this Report and Recommendation, the Court will refer to these unidentified individuals as the "third party."

[8] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

relief based upon a claim that was adjudicated on the merits by a state court unless the petitioner demonstrates that the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *See also Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (same). "This standard is difficult to meet but 'stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'" *Auvenshine v. Davis*, No. 4:17-CV-294-Y, 2018 WL 2064704, at *2 (N.D. Tex., May 3, 2018) (citing *Harrington*, 562 U.S. at 102).

With respect to questions of fact, the state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to questions of law, or mixed questions of law and fact adjudicated on the merits in state court, the petitioner must either demonstrate that the state court decision "was contrary to" clearly established Supreme Court precedent, or "involved an unreasonable application of" that precedent. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Pursuant to the "contrary to" clause, district courts may only grant habeas relief if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Pursuant to the "unreasonable application" clause, district courts may only grant relief: (1) when a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular

state prisoner's case[,]" or (2) when the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

**B.    FED. R. CIV. P. 56**

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). In pertinent part, Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831, 121 S. Ct. 84 (2000). District courts considering motions for summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. Nevertheless, the application of Rule 56 in the federal habeas context differs from its application in "the average civil case." *Torres v. Thaler*, 395 F. App'x 101, 106 (5th Cir. 2010) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004)). As the Fifth Circuit has explained:

> [T]he rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1)-which mandates that findings of fact made by a state court are "presumed to be correct"—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.

*Smith*, 311 F.3d at 668.

## C.    Prosecutorial Misconduct

When a prosecutorial misconduct claim is raised in a habeas proceeding, the court must determine whether the alleged misconduct "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (internal quotation marks omitted).  This inquiry requires an examination of the prosecution's conduct within "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986).

"To constitute a due process violation, the prosecutorial misconduct must be of 'sufficient significant to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987).  A trial is fundamentally unfair when "there is a reasonable probability that the verdict might have been different had the trial had been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)).  "A prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288–89 (5th Cir. 1984)).

## D.    Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.

*Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (citing *Montejo v. Louisiana*, 566 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings, including the plea-bargaining process. *See Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler*, 566 U.S. at 165.

In *Strickland v. Washington*, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts need not address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from their perspective at the time rather than look towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately and made decisions using reasonable professional judgment. *Id.* at 690. The sufficiency of counsel's representation may be determined, and indeed substantially

influenced, by the defendant's own statements and actions. *Id.* at 691. As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client said. *Id.* Counsel's conversations with the defendant may, then, be critical to properly assessing his actions during litigation. *Id.* A defendant establishes a violation of his Sixth Amendment rights when he shows that his counsel's performance was deficient, and that he suffered prejudice as a result. *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *Strickland*, 466 U.S. at 687).

To demonstrate that his attorney's representation was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687–91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* Therefore, to establish prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 669.

A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694. The prejudice prong of *Strickland*, then, focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under the test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229–30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV.    Discussion

As noted above, Gaitan's § 2254 Petition raises three distinct grounds for relief rooted in allegations that the prosecution engaged in prosecutorial misconduct to convict

him, and that RuBane and Moreno provided him with ineffective assistance of counsel.[9]

Within his three distinct grounds for relief, Gaitan raises four total claims drawn from his

original and supplemental pleadings. *See* Dkt. Nos. 1, 15, 16, 43, 44, 45. Accordingly, the

Court construes Gaitan's Petition to raise the following four claims and corresponding

subclaims:

(1) Prosecutorial misconduct and violations of the Fourteenth Amendment:

    a. The State of Texas did not acknowledge a treaty with Mexico when it used a statement Gaitan said during his arrest in Mexico;

    b. The prosecution did not turn over exculpatory evidence in violation of *Brady*;

    c. Detective Lucio provided false testimony by order of the prosecution;

    d. Detective Lucio was biased towards Gaitan; and

    e. The prosecution presented false evidence when it introduced an edited transcription and translation of a video recording.

(2) Gaitan is being held illegally based on false testimony from a witness that was not at trial.

(3) Trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment in the following instances:

    a. RuBane had health problems that affected her performance;

    b. RuBane failed to investigate the third party hired by Detective Lucio;

    c. RuBane failed to challenge Detective Lucio's testimony incriminating Gaitan;

    d. RuBane failed to call additional witnesses;

    e. RuBane failed to point out to the jury that Gaitan has a speech impediment; and

---

[9] Because Gaitan is proceeding pro se, his pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

      f.   RuBane failed to attack Lucio's statements regarding the translated and transcribed video conversation.

(4) Appellate counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment in the following instances:

      a.   Moreno failed to raise the claim that Detective Lucio improperly recorded a conversation between Gaitan and his father;

      b.   Moreno failed to raise the claim that Detective Lucio continued to interrogate Gaitan after he invoked his right to counsel; and

      c.   Moreno failed to investigate and raise claims that RuBane had a conflict of interest.

*See* Dkt. Nos. 1 at 6–7; 15 at 5–30; 16; 43; 44; 45.

In her Motion for Summary Judgment, Davis asserts that Gaitan's claims are either unexhausted and procedurally defaulted or lack merit. Dkt. No. 70. In his Response, Gaitan asserts that Lucio conducted an improper investigation, and that RuBane and Moreno rendered ineffective assistance of counsel when they failed to raise certain claims and move to suppress harmful evidence. Dkt. No. 72. The Court will address each of Gaitan's four claims, and subclaims, below.

## A.    Claim 1: Prosecutorial Misconduct

    <u>Subclaim (a). The State of Texas did not acknowledge a treaty with Mexico when it used a statement Gaitan said during his arrest in Mexico.</u> Gaitan contends that Mexico and Texas have a treaty agreement which requires the disclosure of all exculpatory evidence and other information. Dkt. Nos. 1 at 6; 15 at 5–7. Gaitan does not specify what, if any treaty, was violated to support his claim. Instead, Gaitan avers that a treaty violation constitutes a breach of his due process rights under the Fourteenth Amendment. Dkt. No. 15 at 5. Moreover, Gaitan asserts that he made an exculpatory statement to Mexican authorities that proves his innocence, and that his statement should have been

recorded and given to Texas law enforcement. *Id.* at 7. Davis argues in her Motion that Gaitan fails to demonstrate a due process violation or specific facts alleging a treaty violation. Dkt. No. 70 at 20. In his Response, Gaitan argues that all records concerning his arrest in Mexico were not made available, and that this failure represents a suppression of evidence. Dkt. No. 72 at 3–4.

Here, Gaitan's claim lacks merit. Gaitan fails to provide enough evidence to show that a treaty agreement exists between Mexico and Texas, or how such an alleged violation of said treaty constitutes a breach of his due process rights. Conclusory allegations are insufficient to raise a constitutional issue in habeas proceedings. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1992) (same). "[C]onclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allision*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

Subclaim (b). The prosecution did not turn over exculpatory evidence in violation of *Brady*. Gaitan contends that the prosecution failed to disclose an exculpatory statement he made to Mexican authorities that proves his innocence. Dkt. No. 15 at 5–7. Gaitan asserts that this failure constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* In her Motion, Davis argues that Gaitan's statement is not exculpatory, and it was not suppressed. Dkt. No. 70 at 21. In his Response, Gaitan claims that a treaty agreement between Mexico and Texas requires the prosecution to disclose all favorable evidence and other information about his capture in Mexico. Dkt. No. 72 at 5.

Here, Gaitan's allegation of a *Brady* violation lacks merit. In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt

or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To prevail on a *Brady* claim, "a defendant must make three showings." *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004). First, the defendant must show that the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Id.* Second, the defendant must show that the prosecution suppressed the evidence, either willfully or inadvertently. *Id.* Third, the defendant must show that he has been prejudiced as a result. *Id.* Under the AEDPA, federal courts cannot review *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). Instead, the review is limited to whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004) (emphasis added).

The TCCA affirmed the trial court's findings and denied Gaitan habeas relief. *See* Dkt. No. 31-29 at 1–2. Specifically, the trial court determined that Gaitan's claim was "non-cognizable in an application for writ of habeas corpus. Only constitutional, fundamental and jurisdictional [claims] are cognizable." Dkt. No. 32-11 at 41 (citing *Ex parte Graves,* 70 S.W.3d 103, 109 (Tex. Crim. App. 2002)).[10] Gaitan has not argued, much less demonstrated, that the TCCA's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination

_____

[10] The pertinent part of *Ex parte Graves* provides that "both federal and Texas courts have confined the scope of post-conviction writs of habeas corpus to jurisdictional or fundamental defects and constitutional claims. Violations of statutes, rules, or other non-constitutional doctrines are not recognized." 70 S.W.3d at 109.

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Gaitan has not met this burden, or even addressed the requirements of § 2254(d).

Subclaim (c). Detective Lucio provided false testimony by order of the prosecution. Gaitan alleges that Lucio lied in order to secure his conviction. Dkt. No. 15 at 10. Specifically, Gaitan claims that Lucio relied on an unrecorded conversation and testified that Gaitan used the term "force" when describing his daughter's sexual assault. *Id.* at 10–11. Davis argues that Gaitan fails to provide direct evidence that Lucio lied, or that the prosecution relied on false testimony. Dkt. No. 70 at 22. In his Response, Gaitan asserts that, because of his speech impediment, he had trouble understanding the criminal charges leveled against him. Dkt. No. 72 at 7. Gaitan maintains that Lucio took advantage of his speech impediment to accuse him of committing the alleged sexual assault. *Id.*

The prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). To succeed on a claim that the government's witness gave false testimony, and the prosecution should have known or knew that the testimony was false, a petitioner must show that: "(1) the statements were actually false; (2) the statements were material, i.e., 'a highly significant factor reasonably likely to have affected the judgment of the jury'; and (3) the prosecution knew they were false." *United States v. Chagra*, 735 F.2d 870, 874 (5th Cir. 1984) (quoting *United States v. Mack*, 695 F.2d 820, 822–23 (5th Cir. 1983)). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the

jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154.

Gaitan has failed to provide any evidence—other than his own assertion—that Lucio gave false testimony. Gaitan also has not shown that the prosecution knew that Lucio's testimony was false. Without evidence to the contrary, there is no proof that Lucio gave false testimony. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his pro se petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971)).

Subclaim (d).  Detective Lucio was biased towards Gaitan.  Gaitan contends that Lucio conducted an improper, biased investigation. Dkt. No. 15 at 6. Davis asserts that prosecutorial misconduct does not occur when a witness or investigation turns against the defendant. Dkt. No. 70 at 22. In his Response, Gaitan argues that Lucio was a drug enforcement detective and, because Gaitan had two pending drug-related cases, Lucio carried out a biased investigation. *See* Dkt. No. 72 at 8–9.

A prosecution's actions do not raise to a constitutional violation unless the "acts were so prejudicial as to render a trial fundamentally unfair in violation of the due process clause." *Easter v. Estelle*, 609 F.2d 756, 760 (5th Cir. 1980). To establish prejudice, "the petitioner must demonstrate either persistent or pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the [misconduct] no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). Gaitan cites to *United States v. Carter*, 564 F.3d 325 (4th Cir. 2009), to support his claim. Dkt.

No. 72 at 8.  However, Gaitan's reliance on *Carter* is misapplied; in that case, the Fourth Circuit addressed whether a federal district court abused its discretion in sentencing the defendant outside the U.S. Sentencing Guidelines.  Unlike in *Carter*, Gaitan was sentenced in state court pursuant to Texas law, not the U.S. Sentencing Guidelines. Gaitan has failed to provide evidence demonstrating that Lucio engaged in persistent and widespread misconduct rising to the level of a constitutional violation.  *See Felde*, 795 F.2d at 403.

Subclaim (e): The prosecution presented false evidence when it introduced an edited transcription and translation of a video recording.  Gaitan contends that the prosecution presented false evidence in violation of his Fourteenth Amendment rights when it edited and transcribed a video recording between him and his father. Dkt. No. 15 at 8.  Gaitan claims that the video recording shows him struggling with certain words, which misled the jury. *See id.* at 8–10.  Davis argues that Gaitan fails to specify what an unedited version of the video recording would show or how the video recording represents tainted or false evidence.  Dkt. No. 70 at 23.  Moreover, Davis argues that Gaitan does not deny the authenticity of the video recording or transcription but rather claims that his speech impediment unfairly misled the jury. *See id.*  In his Response, Gaitan contends that an unedited translation and transcription of the video recording would have helped his defense by presenting a complete picture of the conversation. Dkt. No. 72 at 9–10.

To succeed on his claim that the prosecution used false evidence, Gaitan must prove that the prosecution knowingly introduced false or misleading evidence at trial.  "It is well settled that the State is not permitted to present false or allow the presentation of false evidence to go uncorrected." *Moody v. Johnson*, 139 F.3d 477, 484 (5th Cir. 1998). The prosecution's knowing use of false or misleading evidence constitutes a due process

violation. *See Nobles v. Johnson*, 127 F. 3d 409, 415 (5th Cir. 1997). A petitioner must show the following to succeed on a due process violation:

> To establish a due process violation on the State's knowing use of false or misleading evidence, [a habeas petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief.

*Barrientes*, 221 F.3d at 753 (quoting *Nobles*, 127 F.3d at 415) (internal quotation marks omitted). False evidence is "specific misleading evidence important to the prosecution's case in chief." *Nobles*, 127 F.3d at 415 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)).

Here, Gaitan fails to show that the edited translation and transcription of the video recording represents false evidence. Gaitan, instead, argues that the edited and redacted versions of the video recording do not present the full conversation between him and his father. Gaitan also fails to explain what specific information was omitted, or how that omitted information would have attacked the prosecution's case. Gaitan seems to claim that his speech impediment negatively influenced the jury. Critically, this is not enough to prove that the prosecution knowingly used false or misleading evidence.

Without further evidence, the Court cannot consider Gaitan's allegations and assertions to support these critical issues. *See Taylor v. Books-A-Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice.") (citation omitted); *Ross*, 694 F.2d at 1011–12 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his pro se petition."). For the reasons stated above, Gaitan's claim and underlying subclaims lack merit. Claim 1, then, is subject to dismissal.

**B.      Claim 2: Gaitan is being held illegally based on false testimony from a witness that was not at trial.**

Gaitan contends that he is being illegally held based on false testimony provided by a witness who was not physically present at his trial. Dkt. No. 15 at 11–12; 16 at 2, 7–8. In her Motion, Davis argues that Gaitan has not exhausted this claim. Dkt. No. 70 at 12. Davis asserts that Gaitan raised this claim for the first time before the TCCA; Davis maintains that Gaitan is now procedurally barred from raising it in federal court. *Id.* In his Response, Gaitan appears to agree that he cannot raise this claim in federal court; he no longer wishes to pursue this claim and asks that it "be void."[11] *See* Dkt. No. 72 at 10.

**C.      Claim 3: Ineffective Assistance of Trial Counsel**

Subclaim (a). RuBane had health problems that affected her performance. Gaitan contends that RuBane rendered ineffective assistance in violation of his Sixth Amendment right to counsel. Dkt. No. 15 at 13. Specifically, Gaitan asserts that RuBane's health problems constituted a conflict of interest between concern for her personal health and the attention required from RuBane for his criminal trial. *Id.* Furthermore, Gaitan alleges that: (1) RuBane was frequently absent in court; (2) she was taking several medications which impacted her performance; and (3) the fact that she became comatose following his trial demonstrates the severity of her health problems. *Id.* at 13–14. Davis argues in her Motion that Gaitan already raised this claim on direct appeal, and that Texas state courts determined that RuBane did not render deficient performance. Dkt. No. 70 at 29. Davis also argues that Gaitan has not provided evidence to prove that RuBane's

---

[11] The Court construes Gaitan abandoning this claim based on his filings. *See* Dkt. No. 15 at 12 ("Because this was not in the trial records or Direct Appeal record, Petitioner is not making this an issue and would like for this [claim] . . . to be void.") (errors in original); Dkt. No. 72 at 10 ("Even if it has been exhausted or unexhausted there is no base.") (errors in original). Therefore, the Court will not examine the merits of his claim or discuss the requirements for exhaustion.

health problems impacted her performance, and therefore his ineffective assistance of counsel claim is conclusory. *Id.* at 30. In his Response, Gaitan argues that RuBane's death in late 2019 demonstrates that her health problems were serious. Dkt. No. 72 at 12. Gaitan avers that he would have requested new counsel if he knew the full extent of RuBane's health problems. *Id.*

Before her death, RuBane provided an affidavit in response to Gaitan's allegations. Dkt. No. 32-11 at 12. In her affidavit, RuBane asserted that though she was ill, "my illness in no way affected my ability to defend my client vigorously, and to the best of my abilities." *Id.* at 42. RuBane explained that she was taking antibiotics but that they did not affect her cognitive abilities. *Id.* at 43. However, RuBane acknowledged that, after Gaitan's trial, she underwent surgery and became comatose for several weeks. *Id.* She also acknowledged that the appellate court removed her as appellate counsel. *Id.* On review of Gaitan's state habeas application, the trial court found that RuBane's performance was not ineffective because she "[acted] objectively reasonably and no error in [Gaitan's] trial could be found to be harmful." Dkt. No. 32-11 at 41. The TCCA affirmed the trial court's determination that RuBane was not ineffective. Dkt. No. 32-29.

Here, Gaitan fails to demonstrate that RuBane's health problems resulted in ineffective assistance of counsel. Likewise, Gaitan raised this issue on direct appeal and was denied relief. Dkt. No. 32-11 at 41. Gaitan cites to *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *United States v. Hoffman*, 733 F.2d 596 (9th Cir. 1984), to support his claim that a conflict of interest includes those between a client and his counsel's personal interest. *See* Dkt. No. 15 at 13. Gaitan's reliance on *Cuyler* and *Hoffman* are misapplied; the Fifth Circuit held in *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) that *Cuyler* only applies when counsel is representing multiple clients in the same proceeding. *Beets*, 65

F.3d at 1266 ("Neither *Cuyler* nor its progeny strayed beyond the ethnical problems of multiple representation. One cannot read *Cuyler* to analyze conflicts of interests in a context broader than that of multiple client representation."); *Gomez v. United States*, No. M-12-470, 2016 WL 9083379, at *3 (S.D. Tex. Jan. 13, 2016) (discussing that the Fifth Circuit has consistently refused to expand *Cuyler* beyond multiple client representations). In all other contexts involving conflicts, the Fifth Circuit explained that the *Strickland* framework applies. *Beets*, 65 F.3d at 1260 ("*Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client."). The Court, then, finds that *Strickland* applies in the instant case.

To prevail on an ineffective assistance claim, Gaitan must meet both prongs of *Strickland*. To show deficient performance, a claimant must show that his counsel's representation "fell below an objective standard of reasonableness." *Williams*, 529 U.S. at 390–91. To show prejudice, a claimant must demonstrate a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.* Gaitan offers anecdotes rather than direct evidence to support his claim. Notably, Gaitan equates the fact that RuBane had health problems to mean that her performance is deemed automatically deficient, "if Rebecca [RuBane] was find and good to go, why she needed to be in a hospital . . . Gaitan did see Rebecca shot up during recess of one of the trial." *See* Dkt. No. 43 at 6 (errors in original). Gaitan must offer more than mere speculation. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller*, 200 F.3d at

282. Critically, it is not enough for Gaitan to allege that RuBane's health problems had some "conceivable effect on the outcome of the proceeding." *Id.*

Subclaim (b). RuBane failed to investigate the third party hired by Detective Lucio.
Gaitan contends that RuBane rendered deficient performance when she failed to investigate and obtain records regarding a third party that captured him in Mexico. Dkt. No. 15 at 15. Davis argues in her Motion that Gaitan fails to explain how an investigation would have changed the outcome of his trial. Dkt. No. 70 at 31. Furthermore, Davis asserts that Gaitan's allegation that an investigation would have revealed that he made a statement of innocence to the third party fails because he could have conveyed this information to RuBane. *Id.* In his Response, Gaitan argues that if RuBane had investigated the third party, it would have revealed that he adamantly denied the allegations and maintained his innocence. Dkt. No. 72 at 14. Gaitan further alleges that an investigation would have undermined Lucio's credibility, and points to the jury passing a note to the trial judge as evidence to support his allegation. *Id.*

Here, Gaitan offers conclusory statements that RuBane was deficient. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. A counsel's "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. A decision by counsel to investigate "can be assessed by taking into account the defendant's own statements, actions, and information supplied by the defendant; whether counsel has reason to believe that pursuing certain investigations would be fruitless or even harmful; resources constraint; and whether the information that might be discovered would be of only collateral significance." *Hoffman v. Cain*, 752 F.3d 430, 440

(5th Cir. 2014) (internal quotation marks, citations, and footnotes omitted). To show prejudice, then, a petitioner must specifically point out what an investigation would have uncovered and how it would have affected the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Gaitan fails to specify how an investigation into the third party would have revealed exculpatory evidence or changed the outcome of his trial. Instead, Gaitan speculates that an investigation would have uncovered some damaging evidence to undermine Lucio's credibility and demonstrate that he made an exculpatory statement of innocence. Critically, this is insufficient to prove deficient performance. To prove deficient performance, the main question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Strickland*, 466 U.S. at 690. Gaitan fails to specify what an investigation into the third party would reveal. Therefore, RuBane's decision not to investigate the third party was reasonable when an investigation would be "fruitless or even harmful." See *Hoffman*, 752 F.3d at 440.

Subclaim (c).  RuBane failed to challenge Detective Lucio's testimony incriminating Gaitan. Gaitan contends that RuBane failed to challenge Lucio's testimony. Dkt. No. 15 at 16. Specifically, Gaitan claims that RuBane's performance was deficient when: (1) she failed to introduce the statement he made to the third party; and (2) she failed to challenge Lucio about this statement. *See id.* at 15–16. In her Motion, Davis argues that RuBane repeatedly impeached and undermined Lucio's credibility at trial. Dkt. No. 70 at 32. Davis further argues that Gaitan fails to explain how his statement of innocence would have changed the outcome of his trial. *Id.* at 33. In his Response, Gaitan argues that RuBane failed to impeach Lucio, and her performance was deficient for failing to exclude Lucio's testimony from trial. Dkt. No. 72 at 15.

A counsel's performance is afforded deferential treatment; counsel enjoys a strong presumption that his conduct was within the "wide range" of professional norms. *Strickland*, 466 U.S. at 689. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017). Gaitan fails to show how further cross-examination of Lucio would have changed the outcome of his trial. Moreover, his claim that RuBane rendered deficient performance is unsupported by the record.

The record shows that RuBane repeatedly challenged Lucio during cross-examination. RuBane impeached Lucio, getting him to admit that: (1) he excluded certain information from his written report;[12] (2) there were issues with the dolls that alleged child victims use to demonstrate abuse;[13] and (3) only sixty-percent of alleged child victims answer honestly.[14] *See* Dkt. No. 31-12 at 44–52. Gaitan's assertion that Rubane failed to challenge Lucio's testimony at trial finds no support in the record.

Subclaim (d). RuBane failed to call additional witnesses. Gaitan contends that RuBane rendered deficient performance when she failed to call his father, brother, or his wife as favorable witnesses on his behalf. Dkt. No. 15 at 17. Davis argues in her Motion that RuBane had the discretion to call upon specific witnesses. Dkt. No. 70 at 33. Davis

---

[12] During cross-examination, RuBane undermined Lucio's credibility when she demonstrated that his report had missing information, "[o]kay. So right off the bat not everything that you did is in this report, correct?" Lucio answered in the affirmative, "Correct." Dkt. No. 31-12 at 44.

[13] When RuBane questioned Lucio about the dolls, he answered by specifying that "[t]here's two what's called anatomically correct dolls that can be used if necessary to–for–so the child can demonstrate the acts that were committed . . . [and] it depends what type of dolls you are talking about. In holding areas there [are] dolls for the kids to play with, and these dolls are not to play with. These dolls are for strictly for demonstration purposes." *Id.* at 46–47.

[14] RuBane asked Lucio, "So that leaves 60 percent of the remainder of the children that you have seen interviewed there that you believe are being honest?" Detective Lucio answered, "Correct." *Id.* at 52.

further asserts that Gaitan has not explained what these uncalled witnesses would have testified to in court, or their willingness to do so. *Id.* at 34. In his Response, Gaitan argues that his father was willing to testify before his death, and that his brother is available to testify. Dkt. No. 72 at 15.

Here, Gaitan fails to demonstrate that RuBane's performance was deficient. Counsel is afforded discretion, where "presentation of testimonial evidence is a matter of trial strategy." *Miller*, 420 F.3d at 362. The Fifth Circuit explained that "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* at 361 (internal quotation marks omitted). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Gaitan fails to show how his family members' testimony, even assuming they were willing to testify, would have changed the outcome of his trial. Instead, Gaitan speculates that his family members' testimony would have been favorable and affected the outcome of trial. RuBane, as defense counsel, is afforded discretion and "is not required to investigate everyone whose name happens to be mentioned by the defendant." *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983) (internal quotation marks omitted). Moreover, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Clark v. Thaler*, 673 F.3d 410, 418 (5th Cir. 2012).

Subclaim (e). RuBane failed to point out to the jury that Gaitan has a speech impediment. Gaitan contends that RuBane failed to address his speech impediment when

the video recording was shown to the jury. Dkt. No. 15 at 18. Specifically, Gaitan argues that he did not use the word "force" to imply that he committed the alleged crime, but instead had trouble understanding the charge of aggravated sexual assault. *See id.* at 18–19. Davis argues that Gaitan has failed to show how RuBane's performance was deficient or prejudiced his trial. Dkt. No. 70 at 35. In his Response, Gaitan argues that RuBane's failure to investigate and compare the edited and unedited versions of the translation and transcription of the video recording prejudiced his trial. Dkt. No. 72 at 16. Gaitan further explains that Lucio misled the jury, and that Gaitan never used the word "force" to indicate guilt. *See id.* Gaitan asserts that RuBane should have made this point at trial to undermine Lucio's credibility and support his claim of innocence. *Id.*

Here, Gaitan fails to overcome the strong presumption that trial counsel rendered adequate performance. A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Clark*, 673 F.3d at 418. Despite Gaitan's assertion to the contrary, the record shows that RuBane raised the issue of Gaitan's speech impediment on direct examination. RuBane asked Gaitan to explain why he was having trouble speaking as shown on the video recording:

**RuBane**: Okay. And what did you hear them say in Spanish?

**Gaitan**: Well, from now that I'm being around the case now so much, it's "agresivo." So in other words, when they had first told me "agresivo" in Spanish, I couldn't come up with it right away. So the nearest word that I could find would be "fuerzas."

**RuBane**: By force?

**Gaitan**: By force.

*See* Dkt. No. 31-14 at 147 (errors in original).  The record demonstrates that RuBane raised

and the jury heard this issue, allowing Gaitan to provide an explanation for using the word

"force" in the context of the aggravated sexual assault charge.

Subclaim (f).  RuBane failed to attack Lucio's statements regarding the translated and transcribed video conversation.  Gaitan contends that RuBane rendered deficient performance when she failed to challenge Lucio regarding the translation and transcription of the video recording.  Dkt. No. 15 at 18–19.  Specifically, Gaitan argues that RuBane should have questioned Lucio on cross-examination about the accuracy of the video transcription, and Gaitan's speech impediment.  *Id.* at 19.  Gaitan asserts that RuBane should have continued to cross-examine Lucio when the jury sent a note to the judge regarding Lucio's testimony; her failure to do so potentially affected the outcome of his trial.  *Id.*  In her Motion, Davis argues that RuBane impeached Lucio on multiple occasions, and that Gaitan fails to show how further cross-examination would have changed the outcome of his trial.  Dkt. No. 70 at 36.  In his Response, Gaitan asserts that the translation and transcription of the video recording mislead the jury, and that RuBane prejudiced his trial when she failed to challenge Lucio's testimony.  Dkt. No. 72 at 17–18.

Here, Gaitan's deficient performance claim is without merit.  The TCCA denied Gaitan habeas relief and found that RuBane did not render deficient performance.  *See* Dkt. No. 31-29 at 1–2; 32-11 at 40–41.  As noted above, throughout cross-examination, RuBane impeached Lucio and undermined his credibility.  Dkt. No. 31-12 at 42–61. Gaitan has not shown how questioning Lucio about the translation and transcription of

the video recording would have helped his case, considering that RuBane questioned Lucio on substantive areas of the investigation and successfully impeached him.

The Court finds that Gaitan failed to overcome the strong presumption that RuBane's conduct fell within the range of reasonable professional judgment. *See Strickland*, 466 U.S. at 687–91. Gaitan's claim of ineffective assistance of counsel provided by RuBane, and underlying subclaims, lack merit. Claim 3, then, is subject to dismissal.

## D.   Claim 4: Ineffective Assistance of Counsel on Appeal

<u>Subclaim (a). Moreno failed to raise the claim that Detective Lucio improperly recorded a conversation between Gaitan and his father.</u> Gaitan contends that his appellate counsel, Joseph Moreno, rendered ineffective assistance. Dkt. No. 15 at 20–23. Specifically, Gaitan asserts that Moreno failed to argue that Lucio improperly recorded the conversation between Gaitan and his father, after Gaitan invoked his right to remain silent. *Id.* As a result, Gaitan contends that the video recording should have been suppressed. *Id.* at 23. Davis argues in her Motion that Gaitan's claim lacks merit; Moreno raised this exact claim on direct appeal. Dkt. No. 70 at 37. In his Response, Gaitan argues that Moreno rendered ineffective assistance when he failed to raise a *Brady* claim on direct appeal. Dkt. No. 72 at 20.

A petitioner must show under *Strickland* that appellate counsel committed error. *Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). To establish that appellate counsel was deficient in not raising an issue on appeal, the petitioner must establish that counsel failed "to raise a discrete, purely legal issue, where precedent could not have been more pellucid or applicable." *United States v. Williamson*, 183 F.3d 458, 463 n. 7 (5th Cir. 1999). Petitioner must show that there is a reasonable

probability that petitioner would have prevailed on appeal if he was not prejudiced by appellate counsel. *Robbins*, 528 U.S. at 285–86.

The record shows that Moreno argued that Gaitan's Fifth and Sixth Amendment rights were violated when Lucio used Gaitan's father to elicit information from Gaitan. Dkt. No. 31-18 at 11. Moreno argued that Gaitan's right to remain silent was violated when his father became an agent of Lucio, and that the trial court committed error when it refused to suppress the video recording of that conversation. *Id.* at 14–19. The appellate court heard this claim and affirmed the judgment of the trial court. Dkt. No. 31-4. Critically, Gaitan's claim is unsupported by the record, as Moreno raised the claim on direct appeal. *See Williamson*, 183 F.3d at 463 n. 7.

Subclaim (b). Moreno failed to raise the claim that Detective Lucio continued to interrogate Gaitan after he invoked his right to counsel. Gaitan contends that Moreno rendered ineffective assistance when he failed to argue that his Fifth Amendment rights were violated when Lucio continued to interrogate Gaitan after he invoked his right to remain silent. Dkt. No. 15 at 24–26. In her Motion, Davis argues that the record shows Moreno raised this claim on direct appeal. Dkt. No. 70 at 37. In his Response, Gaitan argues that Moreno was ineffective when he failed to raise this and other claims. *See* Dkt. No. 72 at 20–21.

Here, Gaitan's claim lacks merit; the record shows that Moreno raised the issues on direct appeal. Dkt. No. 31-18. Moreno argued that the trial court committed error by admitting into evidence the conversation between Gaitan and his father. *See id* at 11. Moreno also argued that Gaitan did not waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), when he asked Lucio about meeting his attorney, and that any subsequent conversation with Lucio should have been suppressed. *Id.* at 18–21. Gaitan

has failed to show that Moreno's performance was deficient, or that the TCCA committed error when it denied Gaitan habeas relief.

Subclaim (c).  Moreno failed to investigate and raise claims that RuBane had a conflict of interest.  Gaitan contends that Moreno rendered ineffective assistance when he failed to raise claims concerning RuBane's health problems and her failure to investigate the third party. *See* Dkt. No. 15 at 27–30. Davis asserts that Gaitan has not shown that Moreno rendered deficient performance, and that the appellate court already rejected these two claims. *See* Dkt. No. 70 at 38. In his Response, Gaitan argues that he was alone and without legal assistance during the appellate process, and that Moreno was deficient for failing to obtain records regarding the third party. Dkt. No. 72 at 22.

Here, Gaitan's claims fail for two reasons.  First, the appellate court determined that RuBane provided effective assistance of counsel, and that her health problems did not affect the outcome of trial. *See* Dkt. No. 31-4; 31-22. The TCCA affirmed that Gaitan was not entitled to habeas relief. *See* Dkt. No. 31-29. Gaitan fails to demonstrate that the TCCA's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Second, as previously noted, Gaitan has not shown how information regarding the third party would have helped his case.

The Court finds that Moreno did not render ineffective assistance when he failed to raise certain claims the appellate court determined to be frivolous.  Appellate counsel is afforded discretion to raise only those arguments most likely to succeed on appeal as opposed to every nonfrivolous argument. *See United States v. Burleson*, 22 F.3d 93, 95

(5th Cir. 1994) (Counsel has "no duty to bring frivolous appeals."). Moreover, appellate counsel is not deficient for not raising claims that were denied on state direct review. *Cantu v. Collins*, 967 F.2d 1006, 1017 (5th Cir. 1992).

The Court finds that Gaitan's claim of ineffective assistance of counsel provided by Moreno on appeal, and underlying subclaims, lack merit. Claim 4, then, is subject to dismissal.

## V.     Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Said differently, where claims have been dismissed on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Where claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition state a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural hiring." *Id.*

District courts may deny certificates of appealability *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Gaitan has not made a substantial showing of the denial of a constitutional right.

## VI.    Recommendation

For the reasons stated above, it is recommended that: (1) Davis' Motion be **GRANTED**; (2) Gaitan's Petition be **DISMISSED WITH PREJUDICE**; (3) the Court **DECLINE** to issue a certificate of appealability; and (4) the Clerk of Court be **DIRECTED** to **CLOSE** this case.

## VII.   Notice to Parties

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1).

**SIGNED** on this **14th** day of August, 2020, at Brownsville, Texas.

_____

**Ignacio Torteya III**
**United States Magistrate Judge**